```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

Katherine Mendola

   v.                                    Civil No. 11-cv-338-PB

Joanne Fortier, Warden,
New Hampshire State Prison
for Women

# O R D E R

Before the court is Katherine Mendola's petition for a writ of habeas corpus (doc. no. 1), filed pursuant to 28 U.S.C. § 2254. The matter is before the court for preliminary review to determine whether the petition is facially valid and may proceed. See Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 Rules") (requiring court to dismiss habeas petition where petition facially demonstrates that there is no entitlement to relief); United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2) (requiring magistrate judge to preliminarily review prisoner actions to determine whether plaintiff or petitioner has stated any claim upon which relief might be granted).

**Standard of Review**

Under LR 4.3(d)(2) and § 2254 Rule 4, when an incarcerated petitioner commences a habeas action pro se, the magistrate judge conducts a preliminary review.  The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed if the court finds that the petition fails to state any claim upon which relief might be granted.  See LR 4.3(d)(2); § 2254 Rule 4.

In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).  The court applies a standard analogous to that used in reviewing a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6).  The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1,

12 (1st Cir. 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact."  Id. (citations, internal quotation marks and alterations omitted).  The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible.  See id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits."  Ocasio-Hernández, 640 F.3d at 13.

## Background

In 2008, Katherine Mendola was convicted of criminal solicitation to commit murder in the New Hampshire Superior Court, sitting at Rockingham County. The charges against Mendola arose out of an undercover sting operation, during which Mendola was audio and videotaped, hiring an undercover law enforcement officer acting as a "hit man," to kill the wife of someone for whom the state alleged Mendola harbored a romantic obsession.

Mendola states that the meeting between the undercover officer and Mendola was orchestrated by Mendola's sometime-roommate and former boyfriend, who was acting as a police informant. Mendola asserts that her former boyfriend framed her by manufacturing evidence against her and initiating the meeting with the undercover officer. Mendola further asserts that her participation in the solicitation was coerced by her former boyfriend, who was physically abusive, because he threatened to kill her if she did not participate in those acts.

## Procedural History

After a jury trial, Mendola was convicted and sentenced to 10 – 20 years in prison. Mendola filed a direct appeal of her conviction in the New Hampshire Supreme Court ("NHSC"). The

4

NHSC affirmed her conviction in a written opinion.  See State v. Mendola, 160 N.H. 550, 552, 8 A.3d 127, 130 (2010).  The record before the court suggests that Mendola did not engage in any state court post-conviction litigation challenging her conviction or sentence.

In the federal habeas petition presently before this court, Mendola does not specifically assert that she has suffered any violation of her federal right as a result of the challenged actions and rulings in state court.  The federal habeas statute permits the court to grant relief only where a petitioner asserts that she "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Generously construing the petition, however, the court identifies the federal rights that appear to be implicated in Mendola's claims.  The claims, as identified below, will hereafter be considered to be the claims in the petition for all purposes.  If Mendola disagrees with the identification of her claims, she must do so by properly moving to amend her petition, or by filing a motion to reconsider this order.  So construed, Mendola asserts the following claims in her petition:

> 1. The trial court violated Mendola's right to due process at trial and sentencing, and to a fair trial, in violation of the Sixth and Fourteenth Amendments, when it:

(a) denied Mendola the right to raise an entrapment defense; (b) allowed evidence to be admitted at trial that had been obtained illegally; (c) denied Mendola the ability to call a witness to support her claim that her former boyfriend had abused her; (d) failed to follow the recommendations of Mendola's psychiatrist regarding Mendola's sentence without first obtaining an evaluation conducted by a state psychiatrist; and (e) improperly made biased decisions based on emotion.

2.   The prosecution acted to deny Mendola due process and a fair trial, in violation of the Sixth and Fourteenth Amendments, when the state: (a) improperly used an informant to entrap Mendola; (b) through its informant, coerced and caused Mendola to engage in criminal acts with threats of violence; (c) improperly used evidence at trial that had been tampered with or manufactured to "frame" Mendola; and (d) failed to disclose exculpatory evidence, including photographs that would demonstrate prior physical abuse of Mendola by the informant.

3.   Mendola was not provided with a state-sponsored psychiatric examination, despite her inability to understand the proceedings against her, in violation of her Fourteenth Amendment due process rights.

    4. Mendola was prosecuted in the wrong jurisdiction, in violation of her right under the Sixth and Fourteenth Amendments to be tried where her crime was committed.

    5. Mendola was denied the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments, when her trial attorney: (a) failed to consider her input in important decisions in the case, including jury selection; and (b) failed to adequately explain the criminal process to her.

    6. Mendola was denied an impartial jury, in violation of her Sixth and Fourteenth Amendment rights, because sensational media coverage of her case biased the jury.

    7. Mendola was denied a jury of her peers, in violation of her rights under the Sixth and Fourteenth Amendments.

## Discussion

I. Custody

To be eligible for habeas relief on her federal claims, Mendola must show that she is in custody in violation of her federal constitutional or statutory rights. See 28 U.S.C. § 2254(a). Mendola's incarceration pursuant to the sentence

imposed on the challenged conviction satisfies the custody requirement in § 2254(a).

## II. Exhaustion

To be eligible for relief on her federal claims in a § 2254 petition, petitioner must show that she has exhausted the remedies available to her in the state courts on those claims, or that state corrective processes are unavailable or ineffective to protect her rights. See 28 U.S.C. § 2254(b)(1). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented." Id. § 2254(c). Unexhausted claims cannot generally be cited as grounds for granting federal habeas relief. See id. § 2254(b). "[A] petitioner's failure to present his [or her] federal constitutional claim to the state courts is ordinarily fatal to the prosecution of a federal habeas case." Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011), cert. denied, ___ U.S. ___, 132 S. Ct. 426.

A petitioner's remedies in New Hampshire are exhausted when the NHSC has had an opportunity to rule on the claims. See Lanigan v. Maloney, 853 F.2d 40, 42 (1st Cir. 1988). "In order to exhaust a claim, the petitioner must present the federal claim fairly and recognizably to the state courts, meaning that

8

he must show that he tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) (internal quotation marks and citation omitted).  "'The appropriate focus [in an exhaustion inquiry] centers on the likelihood that the presentation in state court alerted that tribunal to the claim's federal quality and approximate contours.'" Coningford, 640 F.3d at 482 (emphasis in original) (quoting Nadworny v. Fair, 872 F.2d 1093, 1098 (1st Cir. 1989)).

While Mendola has not, in her petition here, addressed the issue of exhaustion of her state court remedies, a review of the NHSC's opinion affirming her conviction demonstrates that at least one of the claims in the instant petition has been exhausted in that court.  Specifically, Mendola asserted a claim on direct appeal challenging the trial court's decision to exclude a witness who would have testified that Mendola had been abused by her former boyfriend, in violation of her Sixth Amendment right to present all proofs favorable.  The court acknowledged that Mendola had raised the claim, and ruled that the argument was not sufficiently briefed for the NHSC's review. See Mendola, 160 N.H. at 559, 8 A.3d at 135.  The court now finds that Mendola's claim that her federal constitutional

rights were violated when the trial court did not allow her to call a witness to support her claim that her former boyfriend had abused her, numbered claim 1(c) above, has been exhausted in the state courts.

Mendola has not alleged any facts or provided any documents that allow the court to assess whether she has exhausted any of the other federal claims raised in this petition. Mendola has thus failed to demonstrate that she exhausted her state court remedies on any of the federal claims asserted in the instant petition, with the exception of the claim numbered 1(c) above.

The court cannot definitively determine, however, based on the current record, whether a more fully developed record may reveal that one or more of the claims presented here, for which exhaustion has not yet been demonstrated, has in fact been exhausted. Accordingly, Mendola will be granted leave: (1) to amend her petition to demonstrate that she has exhausted each of her federal claims; or (2) to file a motion to stay this action so that she may return to the state courts to complete exhaustion for her claims that are presently unexhausted.

III. Mixed Petition

A so-called mixed federal habeas petition, containing both exhausted and unexhausted claims, is subject to being dismissed without prejudice, or, as appropriate, may be stayed to grant

the petitioner an opportunity to exhaust all of his claims. See Rhines v. Weber, 544 U.S. 269, 278-79 (2005). Alternatively, a petitioner may be granted leave to file an amended petition that omits the unexhausted claims, see id., although in choosing to forego unexhausted claims, the petitioner risks losing the chance to file these claims in a future habeas petition, due to the prohibition against second or successive habeas petitions under 28 U.S.C. § 2244(b).

The § 2254 petition (doc. no. 1) filed here is a mixed petition. The record in this case reflects that dismissing this petition in its entirety would threaten Mendola's ability to file a timely federal habeas petition in the future. This court therefore finds that there is cause to enter a stay of Mendola's federal petition, to provide her with time to exhaust her presently unexhausted claims, should she choose to do so.

## Conclusion

Mendola is directed that, within thirty days of the date of this order:

> 1. if Mendola has previously raised all of the federal claims asserted in her petition in the state courts, including the NHSC, Mendola must amend her petition to show that she has exhausted her state court remedies on her federal claims. To do so, Mendola should file as

11

exhibits to her petition in this court any motions, notices of appeal, briefs, state court decisions, or other documents, which demonstrate that her state remedies have been exhausted; or

  2. if Mendola has not yet exhausted all of her state court remedies on her federal claims, and seeks to do so, she must file a motion to stay this action so that she may return to the state courts to exhaust all of her presently unexhausted federal claims.

Should Mendola fail to amend her petition as directed, or otherwise fail to comply with this order, the court will recommend that the petition be dismissed for failure to demonstrate exhaustion of state remedies as to each of the claims asserted therein. See 28 U.S.C. § 2254(b).

  SO ORDERED.

            _____
            Landya McCafferty
            United States Magistrate Judge

February 2, 2012

cc: Katherine Mendola, pro se

LBM:jba